# COURT OF APPEALS.

ROSWELL JUDSON, respondent, agt. DANIEL GRAY, appellant.

The court below, while an appeal is pending in the court of appeals, as they formerly had after writ of error brought, have still control over the judgment in regard to making amendments, and the judgment is still regarded as remaining in that court for all the purposes of amendments.

After the *remittitur* has issued from the court of appeals under the seal of that court, and has been delivered to the prevailing party, as is the practice in that court, with a view to have it remitted to the court below, the latter court have jurisdiction of the cause, although the remittitur *is not actually filed* with the clerk below; and if a new trial has been awarded, the court below may go on and try the cause.

And where, on such trial, it appeared that the defendant's attorney had the remittitur in his hands, which he had neglected to file, and permitted the plaintiff to go nearly through with the trial, supposing the remittitur had been filed, and the defendant then sprung the point that the remittitur had not been filed, and the court had no jurisdiction of the case,

*Held*, that the defendant could not thus take advantage of his own wrong; he was estopped from urging such an objection, if otherwise good, which it was not.

Where a decree and order of reference to take and state an account of the rents and profits, and the amount, if any thing, due upon the mortgage, after applying the rents and profits towards its payment, is put into the hands of the referee to execute, by the attorney for the plaintiff, the plaintiff becomes liable for the *referee's fees*. Neither party can be said to be the *prevailing party* in the suit, by any report which the referee may make in stating such accounts. That question has to be determined by the final decree on the merits.

Where the plaintiff's attorney requested the plaintiff to give him his note for the amount of the referee's fees, with a promise that he would advance to the referee such fees and the note was given accordingly; *held*, that the referee could sustain an action against the attorney, upon his promise thus made.

Whatever may be said in regard to the rule in England, about which there has been great conflict, the doctrine with us is settled, that an action may be maintained on a promise made by the defendant to a third person, for the benefit of the plaintiff, without any consideration moving from the plaintiff. All that is necessary is, that the promise be made upon a valid consideration moving from such third person.

THIS action was to recover for services rendered by the · plaintiff (respondent), as referee in a cause commenced in the

court of chancery, and brought into and continued in the 6th judicial district, wherein Absalom Calkins was complainant, and Asa M. Calkins *et al.* were defendants.

The bill filed in the suit last stated was filed to redeem certain premises from the lien of a mortgage. The mortgagee and those claiming under him had been in possession of the premises for many years, and Calkins, the mortgagor, sought in that suit to redeem and to compel the defendants to account for the rents and profits, and the reference which was made in the suit, to this plaintiff as referee, was to take and state an account of the rents and profits, and the amount, if any, due upon the mortgage, after applying the rents and profits towards the payment of the mortgage. The defendant in this suit (Gray) was the solicitor of Calkins in that suit, and as such put the decree and order of reference into the plaintiff's hands to execute, and the matter was brought to a hearing before said referee, on a notice given to the other party by the defendant Gray, as solicitor for Calkins; who made his report, stating an account of the rents and profits. The plaintiff, as referee, took from 1500 to 2000 folios of evidence, all of which was taken for the complainant in the chancery suit, in which the present defendant was the solicitor for the complainant.

On the second hearing before the referee, the attorneys for the respective parties agreed, verbally, that the referee should charge his expenses in addition to his *per diem* allowance by statute, if he would take the testimony at South New Berlin, nineteen or twenty miles from the referee's residence; although the agreement was not in writing, it was acquiesced in by defendant. The plaintiff's fees, as referee, were duly taxed before Justice MASON, December 4th, 1849, at $155.94.

The plaintiff obtained a judgment in the supreme court, which was appealed to this court, and by this court reversed (1 *Kernan*, 408), the plaintiff not having declared on the defendant's promise to pay the plaintiff for said services as referee. Accordingly the plaintiff in November, 1854, by motion amended his complaint, by declaring on the promise, and the defendant put in an amended answer, denying the promise,

and plaintiff replied, and on that issue the action was tried at the circuit court in Chenango county, in October, 1855, by Justice SHANKLAND, who held said circuit, the trial by jury having been waived by the parties, and a judgment was given for plaintiff for $230.40, besides costs in this suit, from which defendant appealed to the general term, where said judgment was affirmed.

On the trial of this cause, the defendant Gray insisted that his promise to pay the referee's fees was gratuitous, without consideration, and, therefore, not binding on him. The defendant also assumed that the supreme court had no jurisdiction of the case, as a remittitur from the court of appeals had not been filed with the clerk of the supreme court.

The following opinion was delivered at the general term in the supreme court.

By the court—MASON, Justice. The defendant claimed and insisted, upon the trial of this cause, that the court had no jurisdiction over the cause or the person of the defendant. The objection is based upon the fact that this cause had been appealed to the court of appeals from a former judgment of this court in the action, and the judgment had been reversed and a new trial ordered, and the remittitur, although awarded and sent to this court, had never been filed with the clerk of this court. It appears from the bill of exceptions that the remittitur had been delivered to the defendant, who defends in person, and that upon the trial he put it in evidence in the case. He called Alfred Purdy, deputy clerk of Chenango, and proved by him that he had made the search and could not find any remittitur on file in this cause. He then put the remittitur into the hands of Purdy while upon the stand, and proved by him that the paper handed to him was the remittitur, and that it never had been filed. After the court of appeals had reversed the judgment and awarded the remittitur ordering a new trial, the plaintiff applied at a special term of the supreme court for leave to amend his complaint, which was opposed by the defendant without any objection being raised to the juris-

diction of the court, on the ground that the remittitur had not been filed. The court allowed the amendment on the payment of some $22 costs, which the plaintiff paid, and served his amended complaint, and the defendant answered the same. The cause was then noticed for trial by the defendant, and the plaintiff went through with his evidence and rested, and near the close of the defendant's evidence he raised the question that the remittitur had not been filed. The defendant relied upon the case of *Burkle* agt. *Luce* (1 *Comstock R.* 209), which holds that the court of appeals does not lose jurisdiction of a cause brought up by writ of error until the remittitur is actually filed with the clerk of the court below. The argument of the defendant is, that if the court of appeals does not lose jurisdiction until the remittitur is filed with the clerk of the court below, that the court below does not acquire jurisdiction until the remittitur is filed. This case of *Burkle* agt. *Luce* decides no new doctrine, it but affirms prior adjudications. (7 *Hill's R.* 591; 2 *W. R.* 221; 4 *W. R.* 188; 2 *Comst.* 559.) And in the case of *Palmer* agt. *Lawrence and others* (1 *Selden*, 455), it was held that when the order entered on the decision of the cause in the court of appeals does not correctly state the judgment pronounced by that court, it will be amended on motion, notwithstanding the remittitur may have been sent to the clerk of the court below and filed there.

I am aware that for every purpose of the jurisdiction of the appellate court, the record itself is supposed to be removed, although in point of fact a transcript only is sent. (*Brown* agt. *Clarke*, 3 *J. R.* 443; *Graham's Pr.* 954, 2 *ed.*; 2 *R. S.* 596, § 42.) The court below, while the appeal is pending, as they formerly had after writ of error brought, have still control over the judgment in regard to making amendments, and the judgment is still regarded as remaining in that court for all the purposes of amendment. (*Graham's Pr.* 667, 954; 2 *Cow.* 408; 3 *J. R.* 95; 15 *J. R.* 318; 6 *Cow. R.* 606; 8 *Cow. R.* 746; 1 *Cow. R.* 65; 7 *Cow. R.* 775.) I am of opinion, that after the remittitur has issued from the court of appeals under the seal of that court, and has been delivered to the prevailing

Judson agt. Gray.

party, as is the practice in that court, with a view to have it remitted to this court, that this court has jurisdiction of the cause, and if a new trial has been awarded, that this court may go on and try the cause. It does not follow that if the remittitur is returned to that court and they order it cancelled as they did in 1 *Comstock*, and proceed to retain jurisdiction of the cause, that this court has not acquired jurisdiction by the remittitur being sent to this court, and not recalled, although not actually filed with the clerk of the court. But, again, I think, as an amended complaint was served upon the defendant personally, and he answered that complaint, and then noticed the cause for trial, that this court thereby acquired both jurisdiction over the subject matter of the action and the person of the defendant, and besides, I think the defendant cannot, under the circumstances of the case, be permitted to raise this point upon the trial of the cause and make it the ground of exception. He had the remittitur in his hands, and it was his duty to file it, and if he is allowed to mislead the plaintiff by noticing the cause for trial, and let the plaintiff go through with his case, and then spring this point on him at the end of the trial, it seems to me it would be permitting a party to take advantage of his own wrong, and I think after the defendant, without objection, has put in his answer and taken issue with the plaintiff, and noticed the cause for trial, and permitted the plaintiff to go through with his case upon the supposition that the remittitur was filed, that we may well hold him estopped to urge this objection, if it were held otherwise a good objection, but I do not think the objection tenable.

I regard it too clear to render any discussion of the matter at all profitable, that Absalom Calkins was, and is liable to the plaintiff for his fees in executing the order of reference in the suit of *Calkins* agt. *Isbell, Tucker and others.* A bare statement of the case is quite sufficient to make his liability entirely apparent. That was the case of a bill filed by Calkins to redeem certain premises from the lien of a mortgage. The mortgagee, and those claiming under him, had been in possession of the premises for many years, and Calkins, the mortgagor,

sought in that suit to redeem and to compel the defendants to account for the rents and profits, and the reference which was made in the suit, to the plaintiff as referee therein, was to take and state an account of the rents and profits, and the amount, if any thing, due upon the mortgage, after applying the rents and profits towards the payment of the mortgage. The defendant, Gray, was the solicitor of Calkins in that suit, and as such put the decree and order of reference into Judson's hands to execute, and the matter was brought to a hearing before said referee, on a notice given to the other by the defendant Gray, as solicitor for Calkins, who made his report, stating an account of the rents and profits, and the amount due on the mortgage, and the fact that he reported several hundred dollars due on the mortgage does not make the defendants the prevailing party, so as to cast the duty upon them to pay the referee's fees. Neither party can be said to be the prevailing party in the suit, by any report which the referee may make in stating the accounts. If Calkins shall ultimately sustain this bill, and get a decree allowing him to redeem on the payment of just the sum that Judson reported due on the mortgoge, he will be the prevailing party in the suit.

The said Calkins being thus clearly liable for Judson's fees in executing that order of reference, the defendant Gray, as his solicitor in that suit, wrote to Calkins on the 3d of March, 1849, inclosing a note of $155 94, payable to said Gray or bearer, saying to Calkins that, if he would sign that note and return it to him, he would advance to Judson his fees as referee. The note was signed by Calkins and returned to Gray, and the plaintiff has brought this suit to recover, upon Gray's promise thus made, the amount of his fees as referee in that suit, and having recovered before Justice SHANKLAND, in the circuit court, the defendant claims and insists that he is not liable, and that the judgment should be reversed. I have abstained from stating any of the subsequent dealings between Calkins and the defendant in regard to that note, as they were all after the commencement of the suit, which was on the 4th of March, 1850. They could not do anything to prejudice

Judson agt. Gray.

the plaintiff's rights after that. If he had a good cause of action against the defendant at the commencement of this suit, by no agreement nor by any arrangement between Calkins and Gray could it be released or discharged. Whatever may be said in regard to the rule in England, and there seems to have been great conflict of opinion over the question in Westminster Hall, the doctrine may be regarded as settled with us, that an action may be maintained on a promise made by the defendant to a third person for the benefit of the plaintiff, without any consideration moving from the plaintiff. All that is required is, that the promise be made upon a valid consideration moving from such third person. I will only refer to some of the cases which have vindicated this principle : 1 *J. R.* 140 ; 10 *J. R.* 412 ; 8 *J. R.* 39 ; 13 *J. R.* 496 ; 4 *Cow. R.* 432 ; 9 *Cow. R.* 639 ; 5 *W. R.* 235 ; 2 *Denio R.* 45 ; 4 *Denio·R.* 97. The doctrine prevails in most of our sister states : 10 *Mass. R.* 287 ; 17 *Mass. R.* 575, 400 ; 2 *Metcalf R.* 381, 402, 403 ; 7 *Cush. R.* 337, 340. The courts of Massachusetts have declared the doctrine in unqualified terms that when one person, for a valuable consideration, engages with another by simple contract to do some act for the benefit of a third, the latter, who would enjoy the benefit of the contract, may maintain an action for the breach of such engagement. (7 *Cush.* 340, *and cases above cited ;* 1 *Parsons on Contracts,* 390.)

The same rule is held in the courts of Pennsylvania : *Hurd* agt. *Holdship,* 2 *Watts' R.* 104 ; *see also* 7 *Conn. R.* 347. This doctrine does not rest upon the ground of any actual or supposed relationship between the parties, as some of the earlier cases would seem to indicate, nor upon the reason that the defendant, by entering into such an agreement, has impliedly made himself the agent of the plaintiff. It rests upon the broader and more satisfactory basis, that the law, operating on the act of the parties, creates the duty and establishes the privity, and implies the promise and obligations on which the action is founded. The case at bar falls clearly within this principle. The agreement in question, having been made for the benefit of the plaintiff, on a sufficient consideration, and

having been adopted by him, he can maintain this action against the defendant upon such agreement. It is not necessary that the money should actually come into the defendant's hands to render him liable. Any property which he may receive is a good consideration for his agreement to pay. (*Elwood* agt. *Monk*, 5 *W. R.* 235; *Baker* agt. *Bucklin*, 2 *Denio R.* 45; *Arnold* agt. *Lyman*, 17 *Mass. R.* 400.) In the latter case, a creditor in failing circumstances placed property, consisting of securities and goods, in the hands of the defendant, and took from him a written agreement reciting such deposit, and promising to pay certain debts enumerated, and among them that of the plaintiff, and the court held the action maintainable. The same was held on a transfer of property in the case of *Elwood* agt. *Monk*, 5 *W. R.* 235, *and* 2 *Denio R.* 45, and so in the case of *Cleveland* agt. *Farley*, 4 *Cow. R.* 432, *affirmed in error*, 9 *Cow. R.* 639, where C, in consideration of hay delivered to him by M, promised to pay M.'s debt to F., the court held that F. could maintain an action against C. upon the agreement. The note of Absalom Calkins was a valid security in the hands of the defendant, and a good and sufficient consideration for his promise to pay Calkins' debt to the plaintiff. The court committed no error in the rejection of the evidence offered by the defendant, and there was much of the evidence given by the defendant which was improperly admitted, and cannot in any manner affect the issue between the parties. The judgment should be affirmed.

The case was submitted to this court on appeal.

HENRY R. MYGATT, *for respondent.*
NICHOLAS HILL, *for appellant.*

*March Term*, 1859. The judgment was affirmed with costs, and ten per cent. damages. No opinion was written in this court.